## IN THE UNITED STATES DISTRICT COURT
## WESTERN DIVISION OF MICHIGAN

NICOLE EKBLAD (F/K/A NICOLE
MARIE MILLER)

       Plaintiff,

v.

ALLEGAN PUBLIC SCHOOL DISTRICT
A/K/A ALLEGAN PUBLIC SCHOOLS,
JAMES BAIRD, WILLIAM HAMMER,
KEVIN HARNESS, JIM MALLARD, and
GARY ELLIS,
individually and in their
official capacities,

       Defendants.

Case No. 1:22-cv-00584
Hon.

---

PARKER G. STINAR (P75252)
**WAHLBERG, WOODRUFF,**
**NIMMO & SLOANE, LLP**
Attorneys for Plaintiff
4601 DTC Boulevard, Suite 950
Denver, Colorado, 80237
(303) 571-5302
parker@denvertriallawyers.com

---

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

The undersigned hereby certifies that there is no other action pending in this Court or any other court between the same parties arising from the same transaction or occurrence, nor has such an action been dismissed after being assigned to a judge.

       /s/    *Parker G. Stinar*
           Parker G. Stinar

1

NOW COMES Plaintiff NICOLE EKBLAD (F/K/A NICOLE MARIE MILLER), by and through her attorneys, WAHLBERG, WOODRUFF, NIMMO & SLOANE, LLP, and for the Complaint against the above-named Defendants, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Nicole Ekblad (f/k/a Nicole Marie Miller) was at all times relevant to this cause of action a resident of Allegan County, Michigan.

2.      Defendant Allegan Public School District a/k/a Allegan Public Schools ("APS") is and was at all times relevant to this cause of action a public school district incorporated under the laws of the State of Michigan and a Michigan municipal corporation with its principal place of business located in the County of Allegan, State of Michigan.

3.      Defendant APS at all times relevant to this cause of action regularly received Federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

4.      Upon information and belief, Defendant James Baird (hereinafter "Baird") was at all times relevant to this cause of action a resident of Allegan County, Michigan and/or conducted business in Allegan County, Michigan.

5.      Defendant Baird was at all times relevant to this cause of action an employee of a public school district, acting as a public school district employee, and

2

acting within the scope of his employment and under the color of state law.

6.      Upon information and belief, Defendant William Hammer (hereinafter "Hammer") was at all times relevant to this cause of action a resident of Allegan County, Michigan and/or conducted business in Allegan County, Michigan.

7.      Defendant Hammer was at all times relevant to this cause of action an employee and/or administrator of a public school district, acting as a public school district employee and/or administrator, and acting within the scope of his employment and under the color of state law.

8.      Defendant Hammer at all times relevant to this cause of action was employed at APS as the director of operations of APS.

9.      Upon information and belief, Defendant Kevin Harness (hereinafter "Harness") was at all times relevant to this cause of action a resident of Allegan County, Michigan and/or conducted business in Allegan County, Michigan.

10.     Defendant Harness was at all times relevant to this cause of action an employee and/or administrator of a public school district, acting as a public school district employee and/or administrator, and acting within the scope of his employment and under the color of state law.

11.     Defendant Harness was at all times relevant to this cause of action employed at APS as the superintendent of APS.

3

12.     Upon information and belief, Defendant Jim Mallard (hereinafter "Mallard") was at all times relevant to this cause of action a resident of Allegan County, Michigan and/or conducted business in Allegan County, Michigan.

13.     Defendant Mallard was at all times relevant to this cause of action an employee and/or administrator of a public school district, acting as a public school district employee and/or administrator, and acting within the scope of his employment and under the color of state law.

14.     Defendant Mallard was at all times relevant to this cause of action employed as the high school principal of Allegan High School, which is a school within APS.

15.     Upon information and belief, Defendant Gary Ellis (hereinafter "Ellis") was at all times relevant to this cause of action a resident of Allegan County, Michigan and/or conducted business in Allegan County, Michigan.

16.     Defendant Ellis was at all times relevant to this cause of action an employee and/or administrator of a public school district, acting as a public school district employee and/or administrator, and acting within the scope of his employment and under the color of state law.

17.     Defendant Ellis was at all times relevant to this cause of action employed as the athletic director of Allegan High School, which is a school within APS.

4

18.     This Court has jurisdiction over the claims set forth herein that arise out of federal law pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the claims set forth herein that arise out of state law pursuant to 28 U.S.C. § 1367.

19.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Allegan.

## COMMON ALLEGATIONS

20.     Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

21.     At all times relevant to this cause of action, Defendants were required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

22.     At all times relevant to this cause of action, as an educational institution in receipt of federal financial assistance, APS and/or APS employees were required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

23.     At all times relevant to this cause of action, Defendants were required to adhere to 42 U.S.C. § 1983.

24.     Beginning in 2005 and until 2010, and at all times relevant to this

cause of action, Defendant Baird was employed by APS to provide services, coaching, and instruction to students within the district's swim program. Defendant Baird was the swim coach for the men's high school swim team, and he eventually became the Director of the Aquatic Center at Allegan High School.

25.     By 2007, numerous reports surfaced at APS that Defendant Baird had engaged in unprofessional and inappropriate conduct with several high school girls that were involved in the swim program.

26.     Specifically, at least three high school girls at APS reported Defendant Baird had made inappropriate comments to them about dating, attempted to kiss them or made comments about kissing them, asked them out, placed his hands on their thighs and rubbed their legs, hugged and touched them inappropriately, and discussed having personal feelings for them.

27.     Defendant Baird's harassing and inappropriate comments and behaviors resulted in several girls feeling awkward, uncomfortable, harassed, and some quit the swim program as a result.

28.     In May 2007, due to the overwhelming reports of sexual harassment and inappropriate conduct, Defendants Hammer, Harness, Ellis, and Mallard conducted interviews with the several high school female students that had been victims of Defendant Baird's sexual harassment and misconduct.

29.     Defendants Hammer, Harness, Ellis, and Mallard also interviewed

Defendant Baird.  Defendant Baird denied that he had engaged in inappropriate conduct, but he admitted to some of the factual allegations against him.

30.    These interviews confirmed that Defendant Baird had engaged in numerous incidents of sexual harassment and sexual misconduct with multiple high school girls at APS.

31.    The result of the investigation by Defendants Hammer, Harness, Ellis, and Mallard was a formal "written warning" sent to Defendant Baird on August 1, 2007, by Defendant Hammer.

32.    The written warning identified that Defendant Baird had made "inappropriate, unwelcome comments to a female student" that "could be interpreted as sexual harassment."  It further specified that Defendant Baird had at first been untruthful during the investigation but eventually admitted to making the inappropriate comments.  Finally, it forbid Defendant Baird from working alone with female students, and warned that any future unprofessional behavior would result in further discipline.

33.    Despite the confirmed reports of sexual harassment and misconduct by Defendant Baird, upon information and belief, no Title IX investigation was ever initiated or conducted.

34.    Despite having actual knowledge of sexual harassment, and being individuals with official capacity to take corrective action, upon information and

belief, Defendants Hammer, Harness, Ellis, and Mallard did not initiate a formal Title IX investigation, did not discuss the sexual harassment and misconduct with a Title IX coordinator or representative, and did not take appropriate corrective action to ensure the safety of female students at APS.

35.     On April 2, 2009, Defendant Baird received a disciplinary letter from American Red Cross that both Defendants Harness and Mallard were copied on.

36.     The disciplinary letter indicated that Defendant Baird had failed to comply with American Red Cross requirement standards for the Lifeguard Training program he had been teaching. Specifically, Defendant Baird had greatly deviated from the time standards for the course and had also misled potential students about the time requirements and prerequisites. As a result of his noncompliance and misleading advertisements, Defendant Baird was placed on probation by American Red Cross.

37.     Upon information and belief, Defendants Harness and Mallard did nothing to discipline Defendant Baird or even address his failure to comply with the Lifeguard Training program standards, despite the written warning issued two years before.

38.     At all times relevant to this cause of action, Ms. Ekblad was a student enrolled at APS.

39.     Between 2006 and 2008, while in middle school, Ms. Ekblad

participated in the Allegan swim club, and Defendant Baird was her swim instructor during this time.

40.    In 2008, when Ms. Ekblad entered her freshman year of high school, she joined the woman's swim team at Allegan High School.

41.    During Ms. Ekblad's freshman and sophomore year of high school, Defendant Baird continued to be employed as a swim coach for the men's high school swim team, and he eventually became the Director of the Aquatic Center at Allegan High School.

42.    In this capacity, Defendant Baird offered Ms. Ekblad a position as the team manager of the men's high school swim team.  Ms. Ekblad accepted and began as the team manager her freshman year.

43.    Between 2008 and 2009, during Ms. Ekblad's first year as team manager, and notwithstanding his prior "Written Warning," Defendant Baird engaged in harassing and inappropriate sexual conduct with Ms. Ekblad.

44.    Specifically, in direct violation of his "Written Warning," Defendant Baird and Ms. Ekblad would spend time alone in his office while no one else was around.  While alone, Defendant Baird would frequently and inappropriately hug Ms. Ekblad, touch her shoulders, and give her massages without asking her permission or getting her consent.  Defendant Baird would also make inappropriate and harassing comments to Ms. Ekblad, calling her pretty and remarking on the

way she was dressed.

45.    During her sophomore year, between 2009 and 2010, Ms. Ekblad became a swim instructor and lifeguard at the Aquatic Center, in addition to serving as a manager for the men's swim team.  As a result, Defendant Baird had even more access to her, and his harassing and inappropriate sexual behaviors intensified.

46.    While alone with Ms. Ekblad, Defendant Baird would tell her that he liked her, liked spending time alone with her, and indicated that he would like to date her if she was older.

47.    Defendant Baird shared with Ms. Ekblad unwanted details about his romantic relationship with his girlfriend.  He told Ms. Ekblad that his girlfriend was jealous of Ms. Ekblad, and that he would only remain with his girlfriend until he and Ms. Ekblad could be together.

48.    When Ms. Ekblad would leave the Aquatic Center in the evening, Defendant Baird would inappropriately hug her as she left the building.  He would further attempt to kiss Ms. Ekblad.  As a vulnerable, teenage girl, Ms. Ekblad was forced to resist the continual sexual advances of Defendant Baird, making her feel uncomfortable, unprotected, and sexually harassed.

49.    In early 2010, the men's swim team had a state swim meet in Oakland, Michigan.  The team was transported to the meet in a limousine, and Ms. Ekblad rode with the team in the limousine.  When Ms. Ekblad entered in the

limousine, Defendant Baird had saved her a seat and insisted that she sit next to him.  During the limousine ride, Defendant Baird inappropriately laid his head on Ms. Ekblad's shoulder.  It became clear to her that he did so in order to look down her shirt.

50.    A photographer that also went with the team to the state swim meet took pictures that revealed Defendant Baird staring at Ms. Ekblad, doing a stretching demonstration with Ms. Ekblad, and inappropriately slouched over with his head on Ms. Ekblad's shoulder.

51.    During the state swim meet, Defendant Baird again attempted to kiss Ms. Ekblad while she was alone with him.  He continued to make inappropriate comments about a relationship with Ms. Ekblad and touch her inappropriately.

52.    After the swim meet, Defendant Baird and Ms. Ekblad began preparing for the end of the year banquet ceremony.  On one occasion, Defendant Baird requested that Ms. Ekblad go the store with him to purchase awards that would be given at the ceremony.  Ms. Ekblad agreed.  While she rode in the car with him, Defendant Baird held her hand and groped and rubbed her thigh inappropriately.

53.    Ms. Ekblad felt extremely uncomfortable and awkward around Defendant Baird, and she did not know how to handle the sexual harassment and inappropriate behaviors and comments.  She decided she would resign at the end

of the year to avoid further sexual harassment.

54.     Toward the end of March 2010, Defendant Baird's employment was terminated for inappropriate behaviors.

55.     Ms. Ekblad was never contacted by Defendants Hammer, Harness, Ellis, and Mallard, or anyone at the school, about her interactions with Defendant Baird.

56.     Because Defendants Hammer, Harness, Ellis, and Mallard were deliberately indifferent to the reports of sexual harassment and misconduct, did not initiate a formal Title IX investigation, did not discuss the sexual harassment and misconduct with a Title IX coordinator or representative, and did not take appropriate corrective action to ensure the safety of female students at APS, even though they had the official capacity to do so, Ms. Ekblad was subjected to sexual harassment, discrimination, and abuse, was robbed of a safe educational environment free from sexual harassment, sexual hostility, and gender discrimination promised to students that attend a federally funded public school. Ms. Ekblad was forced to endure a sexually hostile environment and was deprived of the equal educational benefits and opportunities that were available to her peers at Defendant APS.

57.     Ms. Ekblad's Complaint in this matter was timely filed pursuant to MCL § 600.5851b(1); MCL § 600.5855; and/or MCL § 600.5805(6).

## FRAUDULENT CONCEALMENT ALLEGATIONS

58.     Defendants Baird, Hammer, Harness, Ellis, and Mallard knew that Defendant Baird was sexually harassing and assaulting female students as early as 2007.

59.     Defendants Baird, Hammer, Harness, Ellis, and Mallard had a duty to disclose and to warn and protect the female students who were coached, taught, instructed, or otherwise interacted with Defendant Baird.

60.     Instead, Defendants Baird, Hammer, Harness, Ellis, and Mallard concealed this information from female students at APS and the public at large, which had the ability to investigate, sanction, prevent, and/or otherwise prosecute Defendant Baird's misconduct.

61.     In doing so, Defendants Baird, Hammer, Harness, Ellis, and Mallard continued to perpetuate the image of Defendant Baird as a respected teacher, swim coach, and Director of the Aquatic Center, who engaged with students in a professional manner.

62.     In fact, even though Defendant Baird was fired in 2010 from APS for sexual harassment and inappropriate conduct with female students, Defendants entered into an agreement with Defendant Baird that his personnel record, including the disciplinary actions taken against him, would be expunged and destroyed, that he would be allowed to resign in lieu of being terminated, and that

APS would write Defendant Baird a neutral letter of recommendation, which other school districts could reasonably rely on if he sought employment.

63.     These misrepresentations of Defendant Baird were false.  Those who made, perpetuated, and/or affirmed these misrepresentations, including Defendants Baird, Hammer, Harness, Ellis, and Mallard, knew or should have known they were false, but they continued to perpetuate them to preserve the comfortable status quo and/or otherwise for their own purposes.

64.     All such misrepresentations described herein were made with the intent that Ms. Ekblad and other female students would rely on them, and Ms. Ekblad and others reasonably relied on these misrepresentations.

65.     The actions of Defendants Baird, Hammer, Harness, Ellis, and Mallard constituted fraudulent concealment of Ms. Ekblad's causes of action against them.

66.     Such fraudulent concealment reasonably prevented Ms. Ekblad from knowing that she had a cause of action against Defendants until recently when Defendant Baird was again accused of sexually abusing female students in another school district.

67.     Ms. Ekblad is otherwise free from fault, has not contributed to her own injuries, and has at all times made good faith efforts to mitigate her own considerable damages.

68.     Further discovery will reveal additional acts and omissions by Defendants Baird, Hammer, Harness, Ellis, and Mallard, which will prove their pattern and practice of fraudulent concealment.

**COUNT I –
SUBSTANTIVE DUE PROCESS VIOLATION OF
CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH
AMENDMENT OF THE UNITED STATES CONSTITUTION
PURSUANT TO 42 U.S.C. § 1983 –DEFENDANT BAIRD**

69.     Plaintiff reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70.     Defendant Baird was at all times relevant to this cause of action an employee and/or administrator of a public school, was acting as a public school employee and/or administrator, and was acting within the scope of his employment and under the color of state law.

71.     At all times relevant to this cause of action, Ms. Ekblad had the rights under the Due Process Clause under the Fourteenth Amendment of the United States Constitution not to be deprived of life without due process.

72.     At all times relevant to this cause of action, Ms. Ekblad was afforded the rights under the Due Process Clause under the Fourteenth Amendment of the United States Constitution to personal security and bodily integrity, including the right to be free from sexual abuse at the hands of a school employee and particularly when it is not administered for any pedagogical purpose.

15

73.     At all times relevant to this cause of action, Ms. Ekblad had the right under the Due Process Clause under the Fourteenth Amendment of the United States Constitution to be free from arbitrary government conduct that lacks all socially redeeming value.

74.     Defendant Baird engaged in physical sexual harassment and abuse of Ms. Ekblad, which constituted unnecessary, unreasonable, illegal, and excessive force, in violation of Ms. Ekblad's rights under the Due Process Clause under the Fourteenth Amendment of the United States Constitution to personal security and bodily integrity, and to be free from state actions that deprive a person of life, liberty, or property without due process of law, as well as violations of the criminal laws of the State of Michigan and violations of the policies and procedures that were or should have been in effect at Defendant APS.

75.     Those rights were at all times relevant to this cause of action clearly established in that any reasonable governmental official in Defendant Baird's position would have known that such rights were being violated when Defendant Baird inflicted physical sexual harassment and abuse on Ms. Ekblad as alleged herein.

76.     The acts of physical, sexual and emotional harassment and abuse by Defendant Baird of Ms. Ekblad under all circumstances relevant to this cause of action caused injury so severe, was so disproportionate to the need presented, and

was so inspired by malice or sadism rather than a mere careless or unwise excess

of zeal that it amounted to a brutal and inhumane abuse of official power that is

literally shocking to the conscience.

77.     The acts of physical, sexual and emotional harassment and abuse by

Defendant Baird of Ms. Ekblad under all circumstances relevant to this cause of

action lacked any and all pedagogical purpose or justification and lacked any socially

redeeming value.

78.     Defendant Baird when engaging in the conduct as set forth above had

reasonable opportunity to deliberate various alternatives and did not face the need

to make a hurried judgment.

79.     The acts of physical, sexual and emotional harassment and abuse by

Defendant Baird of Ms. Ekblad under all circumstances relevant to this cause of

action amounts to deliberate indifference to the risk that Ms. Ekblad would suffer

harm and to Ms. Ekblad's health and safety of which Defendant Baird was

specifically aware and disregarded.

80.     Defendant Baird's deliberate indifference under the circumstances

relevant to this cause of action reflect a failure to even care about the health and

safety of Ms. Ekblad, and such deliberate indifference under such circumstances

thus literally shocks the conscience.

81.     The use of unnecessary, unreasonable, illegal, and excessive force by

17

Defendant Baird against Ms. Ekblad amounted to a violation of Ms. Ekblad's rights under the Due Process Clause under the Fourteenth Amendment of the United States Constitution to personal security and bodily integrity, and to be free from state actions that deprive a person of life, liberty, or property without due process of law, and those rights were clearly established at all times relevant to this cause of action, and which a reasonable person and governmental official in Defendant Baird's position would have known.

82.     Defendant Baird's conduct as described herein was objectively unreasonable and any reasonable governmental official in Defendant Baird's position at all times relevant to this cause of action would have known that the use of physical force and physical, sexual and emotional harassment and abuse under the circumstances as they were presented to him was unnecessary, unreasonable, illegal, and excessive under the same or similar conditions that existed as alleged herein.

83.     Defendant Baird is not entitled to qualified immunity.

84.     As a direct and proximate result of Defendant Baird's use of excessive force and physical and sexual harassment and abuse of Ms. Ekblad, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to,

the following:

     a.  Physical pain and suffering;

     b.  Mental anguish;

     c.  Fright and shock;

     d.  Denial of social pleasure and enjoyments;

     e.  Embarrassment, humiliation, and mortification;

     f.  Reasonable expenses of necessary medical care, treatment and services;

     g.  Loss of earning capacity;

     h.  Any and all injuries or damages that are learned through the course of discovery.

85.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant Baird, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

86.    The actions and/or deliberate indifference of Defendant Baird as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon

Ms. Ekblad.  As a result of such intentional conduct, Plaintiff is entitled to punitive

damages in an amount sufficient to punish Defendant Baird and to deter others from

like conduct.

WHEREFORE,  Plaintiff respectfully request that this Honorable Court

enter judgment in her favor and against Defendants, jointly and severally, in an

amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as

punitive and/or exemplary damages so wrongfully incurred, as the Court deems

just.

**COUNT II –**
**EQUAL PROTECTION  VIOLATION OF**
**CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH**
**AMENDMENT OF THE UNITED STATES CONSTITUTION**
**PURSUANT TO 42 U.S.C. § 1983 – DEFENDANT BAIRD**

87.     Plaintiff reasserts and re-alleges each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

88.     Defendant Baird was at all times relevant to this cause of action an

employee of a public school, was acting as a public school employee, and was acting

within the scope of his employment and under the color of state law.

89.     The Equal Protection Clause of the United States Constitution

prevents state actors from making distinctions that burden a fundamental right,

target a suspect class, or intentionally treat one individual differently from others

similarly situated without any rational basis.

20

90.     At all times relevant to this cause of action, Ms. Ekblad had the rights under the Fourteenth Amendment of the United States Constitution to equal protection under the law.

91.     Ms. Ekblad is part of a protected class of individuals under the Equal Protection Clause of the United States Constitution.

92.     The Equal Protection Clause of the United States Constitution forbids a governmental actor from treating individuals differently where those actions are not rationally related to some legitimate governmental purpose.

93.     Defendant Baird engaged in physical, sexual, and emotional harassment and abuse of Ms. Ekblad, which violated Ms. Ekblad's rights under the Equal Protection Clause of the United States Constitution in that such physical, sexual, and emotional harassment and abuse was not inflicted on male students in the APS district.

94.     Defendant Baird's actions of treating Ms. Ekblad differently from similarly situated non-female students by inflicting physical, sexual, and emotional harassment and abuse on Ms. Ekblad when such physical, sexual, and emotional harassment and abuse was not inflicted on similarly situated male students was not rationally related to any legitimate governmental purpose.

95.     Defendant Baird's conduct as described herein was objectively unreasonable and any reasonable governmental official in Defendant Baird's

21

position at all times relevant to this cause of action would have known that treating Ms. Ekblad differently than similarly situated non-female students where such treatment was not rationally related to any legitimate governmental purpose was a violation of Ms. Ekblad's constitutional rights under the Equal Protection Clause of the United States Constitution.

96.     Defendant Baird is not entitled to qualified immunity.

97.     As a direct and proximate result of Defendant Baird's violation of Ms. Ekblad's rights under the Equal Protection Clause of the United States Constitution, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

    a.  Physical pain and suffering;

    b.  Mental anguish;

    c.  Fright and shock;

    d.  Denial of social pleasure and enjoyments;

    e.  Embarrassment, humiliation, and mortification;

    f.  Reasonable expenses of necessary medical care, treatment and services;

    g.  Loss of earning capacity;

h. Any and all injuries or damages that are learned through the course of discovery.

98.     The actions and/or deliberate indifference of Defendant Baird as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Ms. Ekblad.  As a result of such intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant Baird and to deter others from like conduct.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT III –
MUNICIPAL/SUPERVISORY LIABILITY PURSUANT
TO 42 U.S.C. § 1983 – DEFENDANTS HAMMER,
HARNESS, MALLARD, ELLIS, AND APS**

99.     Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

100.    Pursuant to 42 U.S.C § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendants Hammer, Harness,

Mallard, Ellis, and APS owed Ms. Ekblad certain duties to properly hire, supervise, monitor, and train its employees so as not violate the constitutional rights of students, and Ms. Ekblad in particular and as alleged throughout this Complaint, and to take proper measures to report, prevent, or otherwise protect students such as Ms. Ekblad in the event that such violations may occur.

101.    Defendants Hammer, Harness, Mallard, Ellis, and APS are liable pursuant to 42 U.S.C § 1983, in that their policies, procedures, regulations, and customs, or that their failure to enact policies, procedures, regulations, and customs, caused and were the driving force behind the violation of Ms. Ekblad's constitutional rights as alleged throughout this Complaint.

102.    Defendants Hammer, Harness, Mallard, and Ellis were at all times relevant to this cause of action employees and/or administrators of APS, acting as employees and/or administrators of APS, and acting within the scope of their employment and under the color of state law.

103.    Defendants Hammer, Harness, Mallard, and Ellis at all times relevant to this cause of action held a supervisory and administrative role and had decision-making authority at APS to enact policies, procedures, regulations, or customs regarding, but not limited to, the endangerment and abuse of students and/or children, and had final decision-making authority on matters that included, but were not limited to, training, hiring, retaining, staffing, investigating, and/or disciplining

employees and personnel.

104.    Defendants Hammer, Harness, Mallard, Ellis, and APS at all times relevant to this cause of action had knowledge of Defendant Baird's propensities to provide services and instruction to minor students while he was alone and unsupervised and in an area that was closed off and not visible to other school personnel.

105.    Defendants Hammer, Harness, Mallard, Ellis, and APS with such knowledge condoned, encouraged, or otherwise knowingly acquiesced such conduct, which created substantial risks to Ms. Ekblad that resulted in, or was the driving force behind, the constitutional violations as alleged herein.

106.    Defendants Hammer, Harness, Mallard, Ellis, and APS with such knowledge condoned, encouraged, or otherwise knowingly acquiesced such conduct and thus acted with deliberate indifference to the substantial risks that Ms. Ekblad would be sexually harassed and abused that would result in violation of Ms. Ekblad's constitutional rights as set forth throughout this Complaint.

107.    Defendants Hammer, Harness, Mallard, Ellis, and APS were deliberately indifferent to Ms. Ekblad's constitutional and other rights by failing to promulgate a policy and failing to properly train personnel and employees to prevent the unconstitutional, unlawful, and tortious mistreatment of the students, including Ms. Ekblad, as alleged throughout this Complaint.

108.    Defendants Hammer, Harness, Mallard, Ellis, and APS were deliberately indifferent to Ms. Ekblad's constitutional and other rights by failing to supervise or otherwise take action to prevent the constitutional violations as alleged throughout this Complaint when Defendants Hammer, Harness, Mallard, Ellis, and APS had knowledge that Defendant Baird did and would engage in conduct that created the substantial risks that Ms. Ekblad would be sexually harassed and abused that would result in violation of Ms. Ekblad's constitutional rights as set forth throughout this Complaint.

109.    Defendants Hammer, Harness, Mallard, Ellis, and APS through their policies, procedures, regulations, or customs, or lack thereof, breached their duties, which amounted to reckless and/or deliberate indifference toward the general public, and toward Ms. Ekblad specifically, in the following ways, including, but not limited to:

      i. Failing to properly train its employees regarding the proper use of reasonable and necessary force under the circumstances presented;

      j. Failing to enact or provide training on proper policies regarding the recognition of the risks that sexual harassment and physical sexual abuse will occur;

      k. Failing to enact or provide training on proper policies regarding allowing adults such as Defendant Baird to be alone and unsupervised with minor students such that those minor students were at an increased risk of harm;

l.  Hiring and/or the retention of employees whose character and personality pose a potential danger to the public in general and Ms. Ekblad in particular;

m.  Failure to adequately monitor the conduct and behavior of its employees in general, but specifically Defendant Baird, relative to the propensity to engage in the sexual harassment and physical sexual abuse of children such that, despite written policies against such abuse, failure to sufficiently take action to prevent the occurrence of abuse of Ms. Ekblad has led to the formation of a custom that such harassment and abuse will be encouraged and tolerated;

n.  Failure to have proper policies, procedures, and training to address the danger of using sexual harassment and physical sexual abuse against individuals, including Ms. Ekblad;

o.  Failure to properly screen, supervise, discipline, transfer, counsel or otherwise control employees, including Defendant Baird, who are known or should have been known to engage in improper sexual harassment and physical sexual abuse;

p.  Failure to supervise and/or train employees to prevent violation of students' Constitutional rights;

q.  Sanctioning the use of sexual harassment and physical sexual abuse by failing to adequately discipline or terminate employees who are known to have violated the Constitutional right of students on prior occasions, including but not limited to Defendant Baird;

r.  Having a custom, policy, or practice of tolerating the violation of constitutional rights by employees;

s.  Ratifying the violation of constitutional rights by employees;

t.  Employing and retaining improperly trained employees and administrators;

27

u. Enacting a policy, procedure, or custom of allowing employees, and Defendant Baird in particular, unsupervised access to children, and Ms. Ekblad in particular, in a closed-off or shuttered location;

v. Other acts and omissions which may be learned through the course of discovery.

110. The failures and/or actions set forth above to take action to prevent the sexual harassment and physical sexual abuse by Defendant Baird of Ms. Ekblad were a common pattern and practice among employees and personnel of deliberate indifference such that it constituted a policy or custom and those were followed and enforced by supervisors and administrators, including, but not limited to, Defendants Hammer, Harness, Mallard, Ellis, and APS.

111. The above-enumerated actions, failures, and/or inactions constituted deliberate indifference to the danger to Ms. Ekblad's health, safety, and violation of her constitutional rights by Defendant Baird, including, but not limited to, those alleged in this Complaint.

112. As a direct and proximate result of the above-enumerated actions, failures, and/or inactions, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

w.  Physical pain and suffering;

x.  Mental anguish;

y.  Fright and shock;

z.  Denial of social pleasure and enjoyments;

aa. Embarrassment, humiliation, and mortification;

bb. Reasonable expenses of necessary medical care, treatment and services;

cc. Loss of earning capacity;

dd. Any and all injuries or damages that are learned through the course of discovery.

113.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

114.    The actions and/or deliberate indifference of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Ms. Ekblad.  As a result of such intentional conduct, Plaintiff is entitled to punitive

damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT IV –**
**GROSS NEGLIGENCE/WILLFUL AND WANTON**
**MISCONDUCT – DEFENDANTS BAIRD, HAMMER, HARNESS,**
**MALLARD, AND ELLIS**

115.    Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

116.    Defendant Baird owed Ms. Ekblad a duty to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care, and to avoid the use of unnecessary, unjustified, illegal and unreasonable, excessive physical sexual abuse.

117.    Defendant Baird was grossly negligent and acted so recklessly as to demonstrate a substantial lack of concern that injury would result, and/or acted in an unnecessary or willful or wanton manner toward Ms. Ekblad, and was indifferent to physical and emotional sexual harassment and abuse inflicted on Ms. Ekblad, and nevertheless maliciously carried out those acts, and thus breached the

above duties in a number of ways.

118.    Defendant Baird's conduct, which amounted to gross negligence, was the proximate cause of Ms. Ekblad's injuries.

119.    Defendant Baird is not entitled to immunity under Michigan law.

120.    Defendants Hammer, Harness, Mallard, and Ellis owed Ms. Ekblad a duty to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care, and to avoid engaging in conduct that created the substantial risks that Ms. Ekblad would be sexually harassed and abused.

121.    Defendants Hammer, Harness, Mallard, and Ellis had knowledge that Defendant Baird did and would engage in conduct that created the substantial risks that Ms. Ekblad would be sexually harassed and abused.

122.    Defendants Hammer, Harness, Mallard, and Ellis nevertheless allowed Defendant Baird to engage in conduct that created the substantial risks that Ms. Ekblad would be sexually harassed and abused.

123.    Defendants Hammer, Harness, Mallard, and Ellis by doing so were grossly negligent and acted so recklessly as to demonstrate a substantial lack of concern that injury would result, and/or acted in an unnecessary or willful or wanton manner toward Ms. Ekblad, and were indifferent to the substantial risks that physical and emotional sexual harassment and abuse would be inflicted on Ms. Ekblad, and nevertheless maliciously carried out those acts.

124.    The conduct of Defendants Hammer, Harness, Mallard, and Ellis in that regard, together or separately, were the proximate cause of damages to Ms. Ekblad in that it was foreseeable that such conduct, together or separately, would result in child sexual harassment and abuse of Ms. Ekblad by Defendant Baird.

125.    Defendants Hammer, Harness, Mallard, and Ellis are not entitled to governmental immunity under Michigan law.

126.    As a and/or *the* direct and proximate result of Defendants' conduct, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

   a.  Physical pain and suffering;

   b.  Mental anguish;

   c.  Fright and shock;

   d.  Denial of social pleasure and enjoyments;

   e.  Embarrassment, humiliation, and mortification;
   f.  Reasonable expenses of necessary medical care, treatment and services;

   g.  Loss of earning capacity;

   h.  Any and all injuries or damages that are learned through the

course of discovery.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT V –
## BATTERY – DEFENDANT BAIRD

127.    Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

128.    Defendant Baird's conduct, as set forth above, constituted a willful and harmful or offensive touching of Ms. Ekblad.

129.    Defendant Baird's conduct meets the elements of "criminal sexual conduct" as that term is defined under Michigan law, and in particular, Defendant Baird engaged in sexual contact with Ms. Ekblad by committing an intentional touching of Ms. Ekblad's intimate parts and/or an intentional touching of the clothing covering the immediate area of Plaintiff's intimate parts and that intentional touching was done for the purpose of sexual arousal or gratification and/or done for a sexual purpose.

130.    Defendant Baird intended the act that caused the willful and harmful or offensive touching of Ms. Ekblad.

33

131.   Defendant Baird's conduct, as set forth above, was undertaken during the course of his employment and he was acting, or reasonably believed that he was acting, within the scope of his authority, was not undertaken in good faith but rather with malice, and was discretionary.

132.   Defendant Baird is not entitled to governmental immunity under Michigan law.

133.   As a and/or *the* direct and proximate result of Defendant Baird's conduct, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

ee. Physical pain and suffering;

ff.  Mental anguish;

gg. Fright and shock;

hh. Denial of social pleasure and enjoyments;

ii.  Embarrassment, humiliation, and mortification;

jj.  Reasonable expenses of necessary medical care, treatment and services;

kk. Loss of earning capacity;

ll.  Any and all injuries or damages that are learned through the

course of discovery.

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT VI –
## ASSAULT – DEFENDANT BAIRD

134.    Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

135.    The surrounding circumstances of Defendant Baird's conduct created a well-founded apprehension in Ms. Ekblad of imminent harmful and offensive contact and injury.

136.    The surrounding circumstances of Defendant Baird's conduct created, from Ms. Ekblad's perspective and belief, an apparent present ability for Defendant Baird to accomplish harmful and offensive contact and injury.

137.    Defendant Baird's conduct, as set forth above, was undertaken during the course of his employment and he was acting, or reasonably believed that he was acting, within the scope of his authority, was not undertaken in good faith but rather with malice, and was discretionary.

138.    Defendant Baird is not entitled to governmental immunity under Michigan law.

139.     As a and/or *the* direct and proximate result of Defendant Baird's conduct, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

mm. Physical pain and suffering;

nn. Mental anguish;

oo. Fright and shock;

pp. Denial of social pleasure and enjoyments;

qq. Embarrassment, humiliation, and mortification;

rr. Reasonable expenses of necessary medical care, treatment and services;

ss. Loss of earning capacity;

tt. Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT VII –
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## – DEFENDANT BAIRD

140.    Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

141.    Defendant Baird's conduct, as set forth above, and in particular by inflicting physical and emotional sexual harassment and abuse on Ms. Ekblad, was intentional or reckless, extreme, outrageous, and of such character as to be intolerable in a civilized society.

142.    Defendant Baird's conduct meets the elements of "criminal sexual conduct" as that term is defined under Michigan law, and in particular, Defendant Baird engaged in sexual contact with Ms. Ekblad by committing an intentional touching of Ms. Ekblad's intimate parts and/or an intentional touching of the clothing covering the immediate area of Plaintiff's intimate parts and that intentional touching was done for the purpose of sexual arousal or gratification and/or done for a sexual purpose.

143.    Defendant Baird's conduct was for an ulterior motive or purpose, including, but not limited to, to cause Ms. Ekblad to suffer severe emotional distress.

144.    Defendant Baird's conduct has caused and will continue to cause Ms. Ekblad to suffer severe emotional distress.

37

145.   Defendant Baird's conduct, as set forth above, was undertaken during the course of his employment and he was acting, or reasonably believed that he was acting, within the scope of his authority, was not undertaken in good faith but rather with malice, and was discretionary.

146.   Defendant Baird is not entitled to governmental immunity under Michigan law.

147.   As a and/or *the* direct and proximate result of Defendant Baird's conduct, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

uu. Physical pain and suffering;

vv. Mental anguish;

ww.  Fright and shock;

xx. Denial of social pleasure and enjoyments;

yy. Embarrassment, humiliation, and mortification;

zz.  Reasonable expenses of necessary medical care, treatment and services;

aaa.  Loss of earning capacity;

bbb. Any and all injuries or damages that are learned through the

38

course of discovery.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT VIII –**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**(MCL 37.2101 *et seq*.) – DEFENDANTS APS AND BAIRD**

148.    Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

149.    MCL 37.2102(1) sets forth that "[t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right."

150.    Defendants APS and Baird are each a "person" as that term is defined under MCL 37.2103(g) and are therefore subject to the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

151.    Defendant APS is a "political subdivision" as that term is defined

under MCL 37.2103(h) and is therefore subject to the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

152.    Defendant APS is a "place of public accommodation" as that term is defined under MCL 37.2301 and are therefore subject to the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

153.    MCL 37.2302 sets forth in relevant part that a "person shall not…deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status."

154.    Defendant APS is an "educational institution" as that term is defined under MCL 37.2401 and are therefore subject to the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

155.    MCL 37.2402 sets forth that an "educational institution" shall not do any of the following:

(a) Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex.

(b) Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of religion, race, color, national origin, or sex.

156.    MCL 37.2103(i) sets forth as follows:

i)  Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

    i.  Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

    ii.  Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

    iii.  The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

157.    Defendant Baird made unwelcome sexual advances and other verbal or physical conduct or communication of a sexual nature towards Ms. Ekblad under circumstances and conditions that submission to or rejection of the conduct or communication by Ms. Ekblad was used as a factor in decisions affecting Ms. Ekblad's public accommodations, public services, and education.

158.    Defendant Baird made unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature towards Ms. Ekblad under circumstances and conditions that the conduct or

communication had the purpose or effect of substantially interfering with Ms. Ekblad's public accommodations, public services, and education and created an intimidating, hostile, and offensive public accommodations, public services, and education environment.

159.    Defendant Baird made unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature towards Ms. Ekblad under circumstances and conditions that the conduct or communication had the purpose or effect of denying Ms. Ekblad the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of sex.

160.    Defendant Baird conduct by engaging in physical sexual abuse of Ms. Ekblad constituted sexual harassment as that term is defined under MCL 37.2103(i) and was therefore discrimination "because of sex."

161.    Defendant Baird is liable under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq* for the violations set forth above.

162.    Defendant APS, as set forth above, is subject to liability under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

163.    Defendants Baird and APS and are not entitled to governmental immunity under Michigan law for the violation of the Elliott-Larsen Civil Rights

Act, MCL 37.2101 *et seq*.

164.    As a direct and proximate result of the violations of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*, as set forth above, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

ccc.  Physical pain and suffering;

ddd.  Mental anguish;

eee.  Fright and shock;

fff. Denial of social pleasure and enjoyments;

ggg.  Embarrassment, humiliation, and mortification;

hhh.  Reasonable expenses of necessary medical care, treatment and services;

iii. Loss of earning capacity;

jjj. Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT IX –
## FAILURE TO REPORT CHILD ABUSE –
## DEFENDANTS BAIRD, HAMMER, HARNESS, MALLARD, AND ELLIS

165.    Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

166.    The Michigan Child Protection Law ("CPL") imposes a duty on certain individuals to report suspected "child abuse" or "child neglect" and assigns civil liability for failure to fulfill that duty.

167.    MCL § 722.623(1)(a) sets forth, in relevant part, as follows:

  1. An individual is required to report under this act as follows:

    a. A…social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher…who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect. Within 72 hours after making an oral report by telephone to centralized intake, the reporting person shall file a written report as required in this act.

168.    "Child abuse" is defined under MCL § 722.622(g) as "harm or threatened harm to a child's health or welfare that occurs though nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy."

44

169.    "Central registry" as referenced in MCL § 722.623(1)(a) is defined under MCL § 722.622(c) as "the system maintained at the department that is used to keep a record of all reports filed with the department under this act in which relevant and accurate evidence of child abuse or child neglect is found to exist."

170.    The "department" as referenced in MCL § 722.622(c) is defined under MCL § 722.622(q) as "the department of human services."

171.    MCL § 722.633(1) provides that "[a] person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

172.    Defendants Baird, Hammer, Harness, Mallard, and Ellis are each required under the CPL to report child abuse as set forth under MCL § 722.623(1)(a).

173.    Defendant Baird's conduct by inflicting physical and emotional sexual harassment and abuse on Ms. Ekblad constituted child abuse of Ms. Ekblad as that term is defined under MCL § 722.622(g).

174.    Defendants Baird, Hammer, Harness, Mallard, and Ellis each had reasonable cause to suspect that Ms. Ekblad had been subjected to child abuse as that term is defined under MCL § 722.622(g).

175.    Defendants Baird, Hammer, Harness, Mallard, and Ellis each failed to report child abuse of Ms. Ekblad of which they had reasonable cause to suspect.

176.    Ms. Ekblad suffered damages that were proximately caused by the failure of Defendants Baird, Hammer, Harness, Mallard, and Ellis to report child abuse of Ms. Ekblad of which those Defendants had reasonable cause to suspect.

177.    The failure of Defendants Baird, Hammer, Harness, Mallard, and Ellis to report child abuse of Ms. Ekblad, together or separately, was the proximate cause of the damages that were suffered by Ms. Ekblad for such failures in that it was foreseeable that such failures, together or separately, would result in continued child abuse of Ms. Ekblad.

178.    As a and/or *the* direct and proximate result of the failure of Defendants Baird, Hammer, Harness, Mallard, and Ellis to report child abuse of Ms. Ekblad, as set forth above, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

   a.  Physical pain and suffering;

   b.  Mental anguish;

   c.  Fright and shock;

   d.  Denial of social pleasure and enjoyments;

   e.  Embarrassment, humiliation, and mortification;

   f.  Reasonable expenses of necessary medical care, treatment and

services;

g.  Loss of earning capacity;

h.  Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT X –
## VIOLATION OF TITLE IX OF THE EDUCATION
## ACT OF 1972, 20 U.S.C. § 1681 *et seq.* –DEFENDANT APS

179.   Plaintiff reincorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

180.   Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) provides in pertinent part:

> *"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."*

181.   Title IX is implemented through the Code of Federal Regulations. 34 C.F.R. Part 106.8(b) provides:

> *"... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and*

47

*employee complaints alleging any action which would be prohibited by this part."*

182.   Defendant APS receives federal financial assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

183.   Title IX protects third parties from sexual harassment or violence in a school's education programs and activities. Under Title IX, sexual harassment includes any type of unwelcome conduct of a sexual nature, such as sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

184.   Plaintiff is a "person" within the meaning of 20 U.S.C. §1681(a).

185.   Defendant Baird's repeated sexual harassment, inappropriate touching, hugs, rubbing of Ms. Ekblad's thigh, attempts to kiss Ms. Ekblad, comments about his romantic life and dating, unwarranted and unwanted attention, harassing statements, and other mistreatment against Ms. Ekblad constitute discriminatory harassment and sexual misconduct within the meaning of Title IX.

186.   Defendant Baird's conduct and Defendant APS' deliberate indifference and failure to respond to being on actual notice of Defendant Baird's conduct is a violation of Title IX.

187.   Defendant Baird's actions and conduct while employed by Defendant APS were carried out under one of Defendant APS' educational programs.

188.   Defendant Baird's discriminatory harassment and sexual misconduct was severe, pervasive, and objectively offensive and effectively barred Ms. Ekblad's access to equal educational opportunities and benefits at Defendant APS.

189.   The physical, verbal, and behavioral misconduct by Defendant Baird was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Ms. Ekblad's work and academic performance or creating an intimidating, hostile, or offensive environment for working or learning at the school.

190.   The environment created from the conduct of Defendant Baird was hostile based on the circumstances, including but not limited to the frequency of the conduct, the nature and severity of the conduct, the relationship between Defendant Baird and Ms. Ekblad, the location and context in which the conduct occurred, and the physically threatening and humiliating nature of the conduct.

191.   Defendants Harness, Hammer, Mallard, and Ellis were "appropriate persons" within the meaning of Title IX, and mandatory reporters, who had "actual notice" of the discriminatory harassment and sexual misconduct committed by Defendant Baird toward female high school students as early as 2007.

192.   At all times relevant to this action, Defendants Harness, Hammer, Mallard, and Ellis were officials of APS with the authority to take corrective action

or preventative measures to end and/or remedy the discriminatory harassment and sexual misconduct.

193. Defendant APS officials had actual knowledge of Defendant Baird's inappropriate behavior for a significant period of time before the harm that Ms. Ekblad experienced, yet none of the officials took sufficient steps towards any corrective action or made any effort to protect students from the harm, including initiating a Title IX investigation or discussing the sexual harassment and misconduct with a Title IX coordinator or representative.

194. Defendant APS' deliberate indifference to Defendant Baird's conduct as described herein was malicious, oppressive, or in reckless disregard of Ms. Ekblad's rights such that punitive damages are appropriate.

195. Pursuant to Title IX, Defendant APS and its officials are required to investigate all allegations of sexual and discriminatory harassment upon receiving a report.

196. Defendant APS is subject to liability because despite actual knowledge of Defendant Baird's discriminatory harassment and sexual misconduct, it was deliberately indifferent and took no action to prevent or remedy continued discrimination after receiving credible and repeated reports of inappropriate behavior by Defendant Baird. The lack of adequate response by Defendant APS was clearly unreasonable in light of the known circumstances.

197.   Defendant APS acted with deliberate indifference, and in a clearly unreasonable manner by failing to respond to allegations of discriminatory harassment and sexual misconduct so as to protect Ms. Ekblad and others from such abuse.

198.   As a result of Defendant APS' deliberate indifference to actual knowledge of Defendant Baird's discriminatory harassment and sexual misconduct to female students in 2007, Ms. Ekblad was subject to further discriminatory harassment and sexual misconduct by Defendant Baird.

199.   Additionally, Defendant APS failed to adequately supervise Defendant Baird, despite having actual knowledge that Defendant Baird posed a substantial risk of additional discriminatory harassment and sexual misconduct to the female students to whom he had unfettered access, including Ms. Ekblad.

200.   Defendant APS' failure to formally investigate and take corrective actions to repeated complaints of Defendant Baird's discriminatory harassment and sexual misconduct effectively denied Ms. Ekblad educational opportunities and benefits at APS.

201.   As a result of the foregoing, Ms. Ekblad suffered extensive damages, lost educational and/or recreational opportunities, and was deprived of equal access to education.

202.   As a and/or *the* direct and proximate result of Defendant APS'

conduct, Ms. Ekblad has suffered and will continue to suffer damages, both economic and non-economic, severe physical, psychological, and emotional injuries, as well as serious impairment to her academic and social development, including, but not limited to, the following:

kkk. Physical pain and suffering;

lll. Mental anguish;

mmm.    Fright and shock;

nnn. Denial of social pleasure and enjoyments;

ooo. Embarrassment, humiliation, and mortification;

ppp. Reasonable expenses of necessary medical care, treatment and services;

qqq. Loss of earning capacity;

rrr. Any and all injuries or damages that are learned through the course of discovery.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

Respectfully submitted,

**WAHLBERG, WOODRUFF,**
**NIMMO & SLOANE, LLP**
Attorneys for Plaintiff

By:___ /s/ Parker G. Stinar_____
PARKER G. STINAR (P75252)
4601 DTC Boulevard, Suite 950
Denver, Colorado, 80237
(303) 571-5302
parker@denvertriallawyers.com

Dated: June 23, 2022

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DIVISION OF MICHIGAN

NICOLE EKBLAD (F/K/A NICOLE
MARIE MILLER)

Case No. 1:22-cv-00584
Hon.

      Plaintiff,

v.

ALLEGAN PUBLIC SCHOOL DISTRICT
A/K/A ALLEGAN PUBLIC SCHOOLS,
JAMES BAIRD, WILLIAM HAMMER,
KEVIN HARNESS, JIM MALLARD, and
GARY ELLIS,
individually and in their
official capacities,

      Defendants.

---

PARKER G. STINAR (P75252)
**WAHLBERG, WOODRUFF,**
**NIMMO & SLOANE, LLP**
Attorneys for Plaintiff
4601 DTC Boulevard, Suite 950
Denver, Colorado, 80237
(303) 571-5302
parker@denvertriallawyers.com

---

## PLAINTIFF'S JURY DEMAND

---

NOW COMES Plaintiff NICOLE EKBLAD, by and through her attorneys

WAHLBERG, WOODRUFF, NIMMO & SLOANE, LLP and hereby demand a trial

by jury in the above-captioned matter.

Respectfully submitted,

WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP
Attorneys for Plaintiff

By:＿＿＿ */s/ Parker G. Stinar*＿＿＿＿＿
PARKER G. STINAR (P75252)
4601 DTC Boulevard, Suite 950
Denver, Colorado, 80237
(303) 571-5302
parker@denvertriallawyers.com

Dated: June 23, 2022